## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **THE DISPATCH PRINTING COMPANY,** | : | |
| | : | **Case No. 2:14-cv-375** |
| | : | |
| **Plaintiff,** | : | **Judge Smith** |
| | : | |
| **vs.** | : | **Magistrate Judge Abel** |
| | : | |
| **TIME WARNER CABLE, INC.,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

### FIRST AMENDED COMPLAINT

Plaintiff The Dispatch Printing Company ("The Dispatch"), for its First Amended Complaint against Defendant Time Warner Cable, Inc. ("Defendant" or "Time Warner"), avers as follows:

1.      The Dispatch Printing Company publishes *The Columbus Dispatch* ("The Dispatch") and includes as its affiliates WBNS-TV, Inc. ("WBNS"), licensee of WBNS-TV.   It is an Ohio corporation with its principal place of business in Columbus, Ohio.

2.      Upon information and belief, Defendant is a citizen of the state of Delaware with its principal place of business in Connecticut.

3.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) inasmuch as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**A.**     **The Insight Retransmission Consent Agreement.**

5.     On or about December 15, 2005, WBNS and Insight Communications Company, L.P. ("Insight Communications"), entered into a Retransmission Consent Agreement (the "Insight Retransmission Consent Agreement").  The original term of the Insight Retransmission Consent Agreement was from January 1, 2006, through December 31, 2008, and was amended to extend through December 31, 2013.  A true and accurate copy of the Insight Retransmission Consent Agreement is attached as Exhibit A.

**B.**     **The TWC Retransmission Consent Agreement.**

6.     On or about January 4, 2012, The Dispatch entered into a Retransmission and Consent Agreement with Defendant (the "TWC Retransmission Consent Agreement").  Section 11 of the TWC Retransmission Consent Agreement contains a confidentiality provision providing that the terms and conditions of the TWC Retransmission Consent Agreement shall be kept confidential, except as necessary to enforce a party's rights before a court or agency of competent jurisdiction.   A true and accurate copy of the TWC Retransmission Consent Agreement, subject to select redactions, is attached as Exhibit B.

7.     Under the TWC Retransmission Consent Agreement, among other things, The Dispatch granted Defendant the right to retransmit the WBNS-TV broadcast signal in exchange for the payment of the monthly cash payment ("Subscriber Fee") set forth in Section 6.  The Subscriber Fee is based upon a monthly fee multiplied by the number of Defendant's subscribers located in WBNS' DMA to whom Defendant transmitted the WBNS-TV broadcast signal.

8.     Section 12 of the TWC Retransmission Consent Agreement provides, in relevant part:

> ... If during the Term a Time Warner Company acquires any additional multi-channel video programming distribution system

2

that is in a Station's DMA or that carries a Station's Signal as of the date of such acquisition, then such system shall be added to the [TWC Retransmission Consent Agreement] and deemed to be a "System" for purposes hereof upon the effective date of the acquisition of such system; *provided, however*, that if such system is eligible to retransmit such Station's Signal pursuant to another then-existing retransmission consent agreement governing carriage of such Station, then at Operator's option such system shall be added to this Agreement and deemed to be a "System" for purposes hereon upon expiration of such then-existing transmission consent agreement.

C.     **Defendant's Acquisition of the Insight Subscribers.**

9.     On or about February 29, 2012, Defendant acquired Insight Communications Company.  As a result of said acquisition, Defendant acquired from Insight Communications Company approximately 92,000 subscribers located in WBNS' DMA (the "Insight Subscribers").

10.     In or about February 2012, Defendant issued a press releasing announcing the completion of its February 29 acquisition:  "As a result of the acquisition, Time Warner *adds* more than 760,000 customers . . . ."  (Emphasis added.)  These 760,000 customers included the Insight Subscribers.  The press release also quotes Defendant's CEO and Chairman Glenn Britt as saying:  "We are excited to begin building on Insight's successes and serving *our new customers*."  (Emphasis added.)

11.     After the Insight acquisition was completed, Defendant began providing monthly statements to WBNS identifying the Insight Subscribers as part of a division within Time Warner and treating them no differently than other divisions or systems operated by Defendant.

12.     In terms of its communications with the Insight Subscribers, the former Insight Communication Web sites (*i.e.,* www.myinsight.com) redirected persons to a Time Warner landing page stating:  "Welcome!  Insight is now Time Warner Cable."  Defendant's own Web

page of Frequently Asked Questions for Insight customers described the transaction as a "transition to Time Warner Cable TV."

13.     Insight Communication's cable, broadband, and phone subscribers were transitioned to Defendant's services in spring-summer 2013.  Thereafter, Defendant issued to the Insight Subscribers Time Warner billing statements identifying the Insight Subscribers as Defendant's subscribers.  Publicly, Defendant described this transition as a "migration" of Insight Communication services to Defendant.

14.     Upon information and belief and based upon the foregoing statements and events, Defendant has accepted by assignment, or otherwise, ownership, control and/or management of the systems acquired from Insight Communications, including the Insight Subscribers.

**D.      The Dispatch's Audit.**

15.     The Dispatch conducted an audit for the period of October 2011 through September 2012 (the "Audit Period) to ascertain whether Defendant had properly paid to The Dispatch the Subscriber Fees due and owing under the TWC Retransmission Agreement.

16.     Based upon the audit results, on or about December 30, 2013, The Dispatch provided written notice to Defendant that, among other items, during the Audit Period Defendant had failed to pay The Dispatch the required Subscriber Fees for the Insight Subscribers.  The Dispatch made a claim for underpayment of Subscriber Fees in the amount of $831,339.

17.     On or about January 29, 2014, The Dispatch provided additional written notice that Defendant had failed to pay the required Subscriber Fees for the month of November 2013 to The Dispatch for the Insight Subscribers.  The additional outstanding amounts due and owing to The Dispatch for the month of November 2013 totaled $48,291.

4

18.     On or about February 21, 2014, The Dispatch provided additional written notice that Defendant had failed to pay the required Subscriber Fees for the month of December 2013 to The Dispatch for the Insight Subscribers.  The additional outstanding amounts due and owing to The Dispatch for the month of December 2013 totaled $47,677.   On or about March 10, 2014, Time Warner responded to The Dispatch's prior notices by stating, in relevant part:

> TWC's carriage of WBNS on the systems it acquired from Insight continued to be governed by the Retransmission Consent Agreement between WBNS-TV, Inc. and Insight dated December 15, 2005, as amended, (the "Insight Agreement") until the Insight Agreement expired on December 31, 2013. Section 12 of the Retransmission Consent and Carriage of Ohio News Network Agreement, dated January 4, 2012 between TWC and Dispatch (the "TWC Agreement"), expressly provides that if an acquired system is carrying the Station's signal "pursuant to another then-existing retransmission consent agreement governing carriage of such Station, then at Operator's option such system shall be added to this Agreement and deemed to be [a] 'System' for purposes hereof upon expiration of such then-existing retransmission consent agreement." TWC so-opted to have the Insight Agreement continue to govern its carriage of WBNS on former Insight systems until that agreement expired. Therefore, it was not until January 1, 2014 that TWC's carriage of WBNS on the former Insight systems began to be governed by the TWC Agreement.

19.     By having made such election, Defendant became the Operator for purposes of calculating monthly Subscriber Fees under the Insight Retransmission Consent Agreement.  As evidenced by its actions and statements, Defendant has served, and continues to serve, as the operator of the acquired systems, including the Insight Operators.

20.     The Dispatch provided the foregoing notices to Insight Communications pursuant to the notice provisions of the Insight Agreement.  Such notices were returned as undeliverable, which further evidences Insight Communications' lack of involvement with the assets and subscribers sold and/or transferred to Defendant.

21.    By a correspondence of March 13, 2014, The Dispatch advised that since Defendant had made the affirmative election to proceed pursuant to the Insight Retransmission Consent Agreement, it was obligated to comply with Section 8 of that Agreement, entitled "Most Favored Station."  Section 8 provides:

> *If any broadcast television station (NBC, ABC, CBS or FOX) in the Columbus DMA has, in an agreement with Operator for the carriage of such television station's signal, a "cash-for-carriage" provision relating to the retransmission of such station's signal on a System in the Columbus DMA, Insight shall offer a comparable "cash-for-carriage" provision to WBNS based on a station by station basis subject to the conditions set forth below, with respect to the retransmission of such Station's Signal on such System, until the earlier of the expiration of this Agreement or the expiration of the other broadcaster's agreement;* provided, however, the entire retransmission agreement and all related agreements with such other broadcast television station and its affiliates shall be compared to this Agreement and all related agreements with Station or its affiliates to determine the "cash-for-carriage" provision with offsets for the value of any consideration or services that Operator is currently providing to Station or its affiliates in any manner.  In addition, in order to avail itself of the benefits of any such "cash-for-carriage" provision, WBNS must agree to comply with all terms and conditions applicable to such other broadcast television station based on a station by station basis that are imposed as a directly related condition of the receipt of such "cash-for-carriage" provision.   "Cash-for-carriage" shall only mean a cash payment (or cash equivalent, cash offset or cash credit) by Operator for the right to retransmit a broadcast television station's signal pursuant to the Communications Act of 1943, as amended and the rules and regulations of the FCC which such payment is based on the number of cable subscribers receiving such signal.

(Emphasis added.)

22.    During the relevant time of the above-described underpayments, Defendant has paid retransmission fees to The Dispatch, pursuant to the TWC Retransmission Agreement, for non-Insight Subscribers in exchange for carriage of WBNS in the Columbus DMA.

23.    Upon information and belief, Defendant has paid retransmission fees to other broadcast television stations in the Columbus DMA carrying NBC, Fox, and/or ABC.

6

24. Pursuant to the Most Favored Station provision, Defendant should have previously offered the same cash-for-carriage agreements it had with other broadcasters in the Columbus DMA to The Dispatch for the systems it acquired from Insight Communications Company and specifically as to the Insight Subscribers. Defendant's failures to both offer such cash-for-carriage agreements and pay the fees to The Dispatch was and remains a material breach of the TWC Retransmission Consent Agreement.

25. On or about March 13, 2014, The Dispatch requested that Defendant identify and produce all agreements in which Defendant has paid for carriage of broadcast stations (NBC, ABC, CBS or Fox) in the Columbus DMA during the underpayment periods to allow The Dispatch to determine the cash-for-carriage offers that Defendant previously failed to provide and allow The Dispatch to calculate specific amounts due from Defendant.

26. Defendant has refused to provide the requested information and, further, had not paid The Dispatch those monies due and owing.

27. The Dispatch has fully performed its obligations under the TWC Retransmission Consent Agreement and all conditions precedent have been satisfied. Defendant's failure to pay is a material breach. Defendant's breach of the TWC Retransmission Agreement has proximately caused damages to The Dispatch in excess of $927,000.

WHEREFORE, The Dispatch prays for the following:

A. Compensatory damages in excess of $927,000, plus pre- and post-judgment interest; and

B. Such other relief as this Court deems appropriate.

7

Respectfully submitted,

/s/ Marion H. Little, Jr.
Marion H. Little, Jr.   (0042679)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio  43215
(614) 365-9900
(Fax) (614) 365-7900

Trial Attorney for Plaintiff
The Dispatch Printing Company

OF COUNSEL:

Kris Banvard   (0076216)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio  43215
(614) 365-9900
(Fax) (614) 365-7900

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 2, 2014, a copy of the foregoing was filed

electronically with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to the following:

Robert G. Cohen, Esq.
Kegler, Brown, Hill & Ritter Co., L.P.A.
65 E. State Street, Suite 1800
Columbus, Ohio 43215

Jonathan D. Thier (*pro hac vice*)
John A. Eakins (*pro hac vice*)
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005

Attorneys for Defendant Time Warner Cable, Inc.

/s/ Marion H. Little, Jr.

157-504:498158

8